## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

RANDY KNUDSON,

      Plaintiff,

      v.                                No. 1:25-cv-01186-SMD-SCY

ORRIN HONEYCUTT, individually and
as employee/agent of TOP HAND LLC, and
TOP HAND LLC,
a Colorado Limited Liability Company,

      Defendants.

### MEMORANDUM ORDER

THIS MATTER is before the Court on Plaintiff Randy Knudson's Motion to Remand, filed December 15, 2025.  Doc. 11 ("Mot. to Remand").  Defendants Top Hand LLC ("Top Hand") and Orrin Honeycutt filed their response on December 29, 2025.  Doc. 14 ("Defs.' Resp.").  Plaintiff filed his reply on January 9, 2026.  Doc. 16 ("Pl.'s Reply").  The Court has reviewed the parties' submissions, the record, and the relevant law, and for the reasons below, the Motion is **GRANTED**.  Plaintiff's request for attorneys' fees and costs associated with removal is **DENIED**.

### BACKGROUND

The following recitation of events is based on the notice of removal, Plaintiff's amended complaint ("Am. Compl."), Doc. 1-1, and the statement of relevant facts set forth on the briefings for the motion to remand.

This matter arises from a personal injury action initially commenced in state court.  Mot. to Remand at 1.  On November 14, 2022, Defendant Orrin Honeycutt was operating a commercial tractor-tailor owned by Defendant Top Hand while traveling behind Plaintiff in the same direction on U.S. Highway 60.  Am. Compl. ¶ 6.  Honeycutt was an employee of Top Hand acting within

the scope of his employment when the accident occurred.  The two-lane roadway was icy and lacked shoulders on either side.  *Id.* ¶ 7.  Honeycutt was allegedly driving at an excessive speed and following too closely, resulting in a rear-end collision that forced Plaintiff's vehicle off the roadway and into a ditch.  *Id.* ¶¶ 8, 10.  Plaintiff asserts that he was driving prudently and disclaims all liability for the incident.

The collision activated the vehicle's airbag, which struck Plaintiff in the head and neck.  As a result, Plaintiff suffered severe spinal pain and acute trauma to his back and shoulders.  *Id.* ¶ 12.  Plaintiff's vehicle was rendered a total loss.  *Id.* ¶ 11.

Plaintiff brought this lawsuit in the First Judicial District Court of New Mexico, alleging four counts of negligence.  For relief, Plaintiff seeks compensatory damages for medical and non-medical expenses, pain and suffering, loss of enjoyment of life, as well as damages for the total loss of his vehicle.  Additionally, Plaintiff requests pre- and post-judgment interest, court costs, and punitive damages predicated on Defendants' reckless disregard of the rights and safety of others.  *Id.* at 6–7.

On November 28, 2025, Defendants removed the action to federal court, invoking diversity jurisdiction under 28 U.S.C. §§ 1332, 1441 and 1446.  *See* Notice of Removal.  They allege complete diversity and an amount in controversy in excess of $75,000.  *Id.* ¶ 3.  While the parties agree that complete diversity exists, they dispute whether the amount in controversy meets the jurisdictional threshold.  Plaintiff moves to remand this action to state court, asserting that the amount in controversy falls below $75,000.  Mot. to Remand at 1.

Prior to removal, Plaintiff made a written settlement demand of $62,500, which he contends serves as conclusive evidence that the amount in controversy is below the required jurisdictional amount.  *Id.*  In support of removal, Defendants point to Plaintiff's allegations of

injuries and requests for expansive relief, such as punitive damages. Defendants further maintain that Plaintiff's prior settlement demand is not binding evidence of the amount in controversy because it fails to reasonably reflect the worth of the claims. Defs.' Resp. at 5.

## LEGAL STANDARD

I.       Standard for Removing to Federal Court

Section 1446 of Title 28 of the United States Code governs the procedure for removal. *Mach v. Triple D Supply*, 773 F. Supp. 2d 1018, 1030–31 (D.N.M. 2011). Removal to federal court is authorized for "any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction." *See* 28 U.S.C. § 1441; *Ham v. CarMax Auto Superstores, Inc.*, No. 1:23-CV-01057-DHU-JFR, 2024 WL 2091862, at *2 (D.N.M. May 9, 2024).

Congress has authorized the federal courts to exercise jurisdiction over certain cases between citizens of different states. *See* 28 U.S.C. § 1332(a)(1); *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014). Jurisdiction based on diversity of citizenship exists when a dispute between citizens of different states involves an amount in controversy exceeding $75,000. *See* § 1332(a)(1); *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006).

II.       Standard for Proving Amount in Controversy

"The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). Defendants bear the burden to establish the amount in controversy by a preponderance of evidence. *Id.* at 953. As the Tenth Circuit clarified in *McPhail*, the proponent of federal jurisdiction must prove the underlying contested *facts* to satisfy this standard. *Id.* at 954.

New Mexico's pleadings rules do not require plaintiffs to specify a monetary amount for damages. *See* NMRA 1-008 (stating that unless necessary, a "complaint shall not contain an

allegation for damages in any specific monetary amount"); *see also Swiech v. Fred Loya Ins. Co.*, 264 F. Supp. 3d 1113, 1131 (D.N.M. 2017).  When a state complaint is silent as to the amount in controversy, a defendant may still prove jurisdictional facts by:

> [C]ontentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands.

*McPhail*, 529 F.3d. at 955.

The Tenth Circuit has specifically noted that a plaintiff's proposed settlement amount is "relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Id.* at 956.

Once those underlying jurisdictional facts are proven, a defendant is entitled to stay in federal court unless it is "legally certain" that less than $75,000 is at stake.  *Id.*

### DISCUSSION

I.      Plaintiff's $62,500 Settlement Offer Is Strong Evidence of Amount in Controversy

Plaintiff contends that his $62,500 pre-removal demand is binding evidence that the amount in controversy does not exceed $75,000.  Defendants, however, maintain that this one-day demand carries little weight because it is not a reasonable estimate of Plaintiff's claims.  Defs.' Reply at 6; *see also McPhail*, 529 F.3d. at 956 (holding that a plaintiff's proposed settlement amount is "relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim").  Defendants point to the alleged severity of the injuries, future medical expenses, the total loss of the vehicle, and requests for attorneys' fees and punitive damages as evidence that more than $75,000 is at stake.  Defs.' Reply at 5.  Furthermore, Defendants cite New Mexico's history of "significant monetary verdicts in personal injury cases,"

suggesting that the prospect of punitive damages and a high jury award renders Plaintiff's $62,500 demand an underestimate.  *Id.* at 7–8.

The parties' negotiation records indicate that Plaintiff submitted an initial settlement demand of $65,000 in December 2023.  Pl.'s Reply, Ex. 1 at 4.  Defendants' insurer countered with $5,000, citing "considerations of comparative negligence" and medical records reflecting "soft tissue injuries."  *Id.* at 1.  On October 30, 2025, Defendants' insurer increased its offer to $35,000.  *Id.* at 3.  The same day, Plaintiff reduced his demand to $62,500, which remained open for one day.  *Id.* at 2.  Defendants' final counteroffer was $42,500.  The record contains no further evidence of settlement negotiations, and the matter proceeded to litigation.  Defendants subsequently removed the case to federal court on November 28, 2025.  *See* Notice of Removal.

Contrary to Defendants' assertion that Plaintiff failed to justify his settlement demands, Plaintiff's counsel provided an itemized breakdown of the requested relief in a December 12, 2023 demand letter.  *See* Doc. 14-1 at 1–5.  By December 2023, Plaintiff had incurred approximately $3,010 in medical expenses, consisting of $2,560 for acupuncture and $450 for chiropractic treatment.  *Id.* at 2.  The demand letter calculated Plaintiff's future care at approximately $50,000. *Id.*  This figure is based on a 13-year life expectancy and a continued treatment schedule of at least two acupuncture sessions per month and five chiropractic visits per year.  *Id.*

In addition to medical expenses, Plaintiff also demanded $15,000 for his pain and suffering, representing five times his medical bills as of December 2023.  *Id.*  In the December 2023 demand letter, Plaintiff's counsel averred that $65,000 constituted "a fair and reasonable offer of compromise at this point in time."  *Id.*  On October 30, 2025, Plaintiff reduced that demand to $62,500 without providing a further breakdown.  Doc. 14-2 at 1.

Despite Plaintiff's characterization of the demand as "fair and reasonable," Defendants contend it was at best a compromise rather than a realistic valuation, relying on an assertion by Plaintiff's counsel that "medical costs are likely to rise so these costs could actually be significantly higher." Defs.' Resp. at 7. Defendants suggest that by the time of removal in 2025, Plaintiff's medical costs had exceeded the 2023 calculations, rendering both the $65,000 and $62,500 demands unreasonable estimations of the claim's value. *See id.*

Defendants further attempt to distinguish *Swiech*, where the court remanded the lawsuit because the plaintiff's settlement demand remained consistently below the jurisdictional threshold. *See id.* at 8. *Swiech* aligns with Tenth Circuit's guidance that when a complaint does not specify the amount in controversy, a plaintiff's settlement demand constitutes relevant evidence. *See McPhail*, 529 F.3d. at 956. Courts accord greater weight to plaintiff's settlement demand because "[w]hile a defendant's offer might be relevant to determining the low end of money at play, a plaintiff's offer, and the facts associated with it, is more determinative of the upper end of money at play." *Galvez Blancas v. State Farm Mut. Auto. Ins. Co.*, No. CV 20-1283 KG/LF, 2021 WL 2589119, at *5 (D.N.M. June 24, 2021).

In *Swiech*, the plaintiff requested $50,000 in full satisfaction of his claims. *Swiech*, 264 F. Supp. 3d at 1118. The court emphasized that the plaintiff "has never by himself—in this action—explicitly sought in excess of $75,000" and found that there was "tension" between the demand and the notice of removal. *Id.* at 1135. Although the defendant's notice of removal pointed to the plaintiff's requests for attorneys' fees and punitive damages, the court held that these allegations did not satisfy the defendant's burden to prove the jurisdictional amount by a preponderance of evidence. *Id.*

6

Defendants' attempts to distinguish *Swiech* are unavailing.  They contend that, unlike in *Swiech*, there is no tension between the notice of removal and Plaintiff's settlement demand, which Defendants characterize as a mere compromise.  Defs.' Resp. at 6.  Furthermore, Defendants point out that Plaintiff waited approximately 22 months before filing his complaint in state court, during which time he presumably incurred additional treatment costs.  *Id.* at 7.  Ultimately, Defendants contend that they have sufficiently demonstrated that it is "possible" the amount in controversy exceeds $75,000, referring to Plaintiff's allegations of injuries, his demand for expansive damages, and the perceived likelihood of a significant jury verdict in New Mexico.  *Id.* at 8.

Defendants have failed to adequately distinguish *Swiech* or persuade the Court that Plaintiff's recent $62,500 settlement offer should not be accorded weight.  While Plaintiff may have incurred additional medical expenses during the period between negotiations and the filing of the lawsuit in state court, he extended the $62,500 demand on October 30, 2025, a recent offer made approximately a month before removal.  *See* Doc. 14-2 at 1.  Plaintiff's October 30, 2025 settlement email did not frame the offer as a compromise.  *Id.*  Instead, he simply stated that the demand would remain open for one day and noted he might reconsider his position if there is evidence of comparative fault.  *Id.*  Defendants fail to demonstrate why this $62,500 demand did not accurately and reasonably reflect Plaintiff's valuation of his claims at the time of removal.

An array of cases from this district indicates that, absent evidence showing a higher amount is at stake, a plaintiff's settlement demand below the jurisdictional amount supports a motion to remand.  *See Resendiz v. Progressive Direct Ins. Co.*, 672 F. Supp. 3d 1158, 1164 (D.N.M. 2023) ("Numerous courts have found that settlement offers below the jurisdictional minimum constitute credible evidence that may support granting a motion to remand."); *see also Swiech*, 264 F. Supp.

3d at 1118; *Fisher v. Conner*, No. 1:21-CV-01110-KWR-KK, 2022 WL 19190, at *2 (D.N.M. Jan. 3, 2022).

In several instances, courts have refused to remand because the plaintiff made other demands exceeding $75,000 or represented that the claims were worth significantly more. *See McPhail*, 529 F.3d. at 957 (denying motion to remand because the plaintiff's counsel represented "it may very well be" true that the amount in controversy exceeded $75,000); *Weathers v. Circle K Stores, Inc.*, 434 F. Supp. 3d 1195, 1200 (D.N.M. 2020) (denying motion to remand because the plaintiff's settlement demand was $250,000); *Martinez-Wechsler v. Safeco Ins. Co. of Am.*, No. CIV 12-0738 KBM/ACT, 2012 WL 12892762, at *4 (D.N.M. Sept. 13, 2012) (denying motion to remand because the plaintiff's settlement demand represented less than twice the medical expenses and was therefore not a reasonable estimate of the claims); *Sleep v. Schwan's Co.*, No. CV 19-137 GJF/JHR, 2019 WL 2124468, at *6 (D.N.M. May 15, 2019) (denying motion to remand because the plaintiff represented that damages "may well exceed the $75,000 minimum"). In this case, Plaintiff has never demanded more than $75,000. Nevertheless, Defendants rely on language from Plaintiff's December 12, 2023 demand letter that allegedly elevates the amount in controversy:

> If forced to trial on this matter, Mr. Knudson will testify about the significant hip, back and neck pain he has experienced and his concerns about how the accident has increased his likelihood of having to undergo invasive medical care at some point in the future including knee or hip replacement due to his lack of mobility for a significant period of time after the accident occurred. Of course, if forced to try this matter, we will likely employ an orthopedic surgeon to testify concerning Mr. Knudson's increased likelihood of having to have invasive surgery as a result of the force of this collision and we will also seek recovery of punitive or exemplary damage for your client's reckless driving on the date in question, as well as hedonic damage as allowed by New Mexico law.

Defs.' Resp. at 7.

Yet immediately following the paragraph that Defendants quote, Plaintiff's counsel stated: "I believe that a fair and reasonable offer of compromise at this point in time is by your payment

in the amount of $65,000 in full and complete settlement of all claims." Doc. 14-1 at 2. Because Plaintiff provided a breakdown of the damages and characterized the $65,000 figure as "fair and reasonable," the Court gives little weight to the "compromise" rhetoric. *See id.* at 1–2. Indeed, nothing in the December 2023 demand letter or the October 2025 emails indicates that Plaintiff ever claimed his damages might exceed $75,000.

Many courts in this district view settlement demands exceeding $75,000 as persuasive evidence against remand; however, some recognize that "unreasonably high amounts" in settlement demands may merely reflect "puffing and postering," much like a typical pre-suit demand letter. *Galvez Blancas v. State Farm Mut. Auto. Ins. Co.*, No. CV 20-1283 KG/LF, 2021 WL 2589119, at *5 (D.N.M. June 24, 2021) (noting that "[i]nitial settlement offers are generally inflated, not deflated"); *Fouser v. Pfizer, Inc.*, No. CV 08-905 JH/DJS, 2009 WL 10669473, at *2 (D.N.M. Mar. 18, 2009) (remanding the case even though the plaintiff's settlement demand was $85,000 because the figure was not broken down in any way); *Garcia v. Timberlake*, No. CV 11-1017 JP/RHS, 2012 WL 13081216, at *3 (D.N.M. Jan. 5, 2012) (remanding the case even though the plaintiff's settlement demand was for the lesser of $150,000 or the policy limit because the insurance policy was not attached).

These cases support Plaintiff's position that his affirmative settlement demands of $65,000 and $62,500 constitute persuasive evidence for remand. As the Tenth Circuit instructed in *McPhail*, Defendants must affirmatively establish jurisdiction by proving jurisdictional *facts* that made it *possible* that $75,000 was in play. *See McPhail*, 529 F.3d at 946. Here, Defendants have done very little to establish such facts.

Defendants largely repeat Plaintiff's general allegations, expecting the Court to infer the requisite amount in controversy. Specifically, Defendants highlight the "dramatic" language from

9

the complaint describing the collision's "significant force" and Plaintiff's "severe pain" and "acute trauma." Defs.' Resp. at 2, 8. As in *Swiech*, Defendants here "simply explain[] what the Curt already knows" rather than offering evidence to undermine Plaintiff's valuation of the claims. *Swiech*, 264 F. Supp. 3d at 1135.

Defendants further argue that Plaintiff's requested damages are self-explanatory, noting his claims for past and future medical care, the total loss of his vehicle, and his request for both actual and punitive damages. Defs.' Resp. at 5. However, Defendants fail to provide any new information, estimates, or specific figures, such as Plaintiff's total medical costs to date or the projected cost of potential surgery. All things considered, Defendants offer no explanation as to why Plaintiff's settlement demands were unreasonable, other than the fact that counsel used the word "compromise."

Additionally, Defendants' insurer initially valued Plaintiff's claims at $5,000, based on medical records that then reflected soft tissue injuries. *See* Mot. to Remand, Ex. 1 at 2. Defendants have not clarified whether they now consider that assessment inaccurate or whether Plaintiff's injuries are more severe and will likely require invasive surgeries. New Mexico district courts have denied remand when a plaintiff's medical costs far exceeded the jurisdictional threshold or when the plaintiff explicitly alleged a need for specific, expensive surgeries. *See Aranda v. Foamex Int'l*, 884 F. Supp. 2d 1186, 1188 (D.N.M. 2012) (finding the jurisdictional amount satisfied because the plaintiff specifically alleged a torn anterior cruciate ligament, a lateral meniscus tear, a grade four femoral condral lesion to his right knee, and a severe contusion to the left knee). Here, by contrast, Plaintiff has alleged his injuries only in general terms, and Defendants have not shown the requested damages may reach $75,000. *See Lane v. Wal-Mart Stores Inc.*, No. CIV-07-0954 LAM/LFG, 2007 WL 9710149, at *2 (D.N.M. Dec. 7, 2007) ("[T]he

10

Court declines to draw any negative inference from [Plaintiff's] refusal to stipulate to a cap on damages in the absence of any proof that [Plaintiff's] claims exceed the required amount in controversy.").

For instance, Plaintiff had incurred approximately $3,010 in medical and chiropractic expenses by the end of 2023. *See* Doc. 14-1 at 4–5. He anticipated attending two acupuncture sessions per month at $150 each and five chiropractic visits per year at $45 each. *Id.* at 2. Based on this calculation, his medical costs at the time of removal totaled approximately $7,350. Defendants have failed to illustrate that Plaintiff's past and future medical costs will exceed Plaintiff's estimate.

Defendants rely on a statement by Plaintiff's counsel that, should the case go to trial, Plaintiff will testify to his concerns about the increased likelihood of future "invasive medical care," such as knee or hip replacements. Defs.' Resp. at 7. This assertion does not conclusively establish the jurisdiction amount because counsel immediately qualified the $65,000 demand as fair and reasonable. Standing alone, counsel's statement narrates a litigation tactic and the kind of testimony Plaintiff might offer at trial, rather than making allegations regarding his health conditions and medical costs. Even if the Court treats that assertion as evidence that Plaintiff may require future surgery, Defendants fail to allege how such procedures would push the amount in controversy over $75,000, particularly since there is no evidence that Plaintiff has incurred more than $10,000 in medical costs to date.

In seeking this information, the Court does not invite Defendants to speculate or undermine their own positions; rather, it requires information tending to prove the jurisdictional facts underlying the amount in controversy. *See Hernandez v. Safeco Ins. Co. of Am.*, No. CV 11-245 JP/CG, 2011 WL 13284598, at *3 (D.N.M. Sept. 8, 2011) (holding that a defendant "must do more

than broadly reference the complaint, and that "quoting the allegations of the complaint [in the notice of removal] does not meet Defendant's burden of setting forth *facts* tending to establish the amount in controversy."). Defendants appear to believe that by merely reciting Plaintiff's general injury allegations, potential surgery testimony, and demands for punitive damages, the Court can infer that the jurisdictional threshold is met. However, the Court cannot make this inference without an estimation, calculation method, analogous case comparisons, or other supporting evidence from Defendants.

Defendants also generally allege that New Mexico has produced significant jury awards for personal injury cases in recently years, attaching a news article on the subject. *See* Defs.' Resp. at 7–8; Doc. 14-3. Such general allegations that personal injury lawsuits may lead to large verdicts do not aid the amount in controversy inquiry. If they did, any party in a New Mexico personal injury lawsuit could simply attach records of past jury awards to automatically secure federal jurisdiction.

II.     Defendants Fail to Show Punitive Damages Are Permissible or Capable of Reaching the $75,000 Threshold

The Court must then determine whether Plaintiff's request for punitive damages pushes the amount in controversy beyond the jurisdictional threshold. Defendants argue that it does, citing several high-profile personal injury cases in New Mexico that resulted in significant verdicts. Defs.' Resp. at 7–8. Without submitting calculations, comparing similar cases, or providing any specific analysis, Defendants appear to imply that Plaintiff's demand for punitive damages makes it obvious that the amount in controversy exceeds $75,000. However, "[w]hen the amount in controversy depends largely on alleged punitive damages, the court 'will scrutinize a claim . . . more closely than a claim for actual damages to ensure Congress's limits on diversity jurisdiction

12

are properly observed.'" *Enriquez v. Mesilla Valley Manufactured Hous. Cmty., LLC*, No. 2:26-CV-109-GBW-KRS, 2026 WL 207519, at *4 (D.N.M. Jan. 27, 2026).

In cases involving punitive damages, several District of New Mexico courts estimate the amount in controversy by trebling the medical expenses to reach a reasonable settlement amount and then doubling that amount for punitive damages. Yet, courts within the district apply this approach inconsistently.

In *Aranda*, the court found sufficient amount in controversy based on allegations of serious and permanent injuries requiring continuous treatment. Noting the plaintiff's limp and inability to perform major life activities, the court applied a commonsense estimation to value the knee surgery at a minimum of $15,000. *Aranda*, 884 F. Supp. 2d at 1206–07. The court then concluded that "[i]t is common in personal injury cases to settle on the basis of three times the medical expenses," which put the damages at $45,000. *Id.* at 1207. Finally, the court noted the plaintiff's request for punitive damages and applied a one-to-one ratio multiplier, which brought total damages over $75,000. *Id.*

In *Shirk*, the plaintiff incurred $33,300 in actual damages while seeking punitive damages and statutory emotional distress damages. The court observed that the plaintiff had made an "ambiguous" $100,000 settlement demand to two defendants without any breakdown or explanation. *Shirk v. Gonzales*, No. 17-CV-1129 MCA/KK, 2018 WL 2411601, at *4 (D.N.M. May 29, 2018). By referencing similar cases, the court estimated $50,000 in potential emotional distress damages and $10,000 in attorney's fees, concluding the jurisdictional threshold had been met. *Id.*

In *Roybal*, both parties relied on the *Aranda* formula to support their claims. *Roybal v. Darden Restaurants, Inc.*, No. CV 21-1046 DHU/JFR, 2022 WL 704163, at *3 (D.N.M. Mar. 9,

13

2022). The court did not analyze the formula's general applicability in amount-in-controversy disputes involving punitive damages. Instead, it ruled that the defendants' reliance on general internet materials was insufficient compared to the plaintiff's more specific evidence of $5,639.2 in medical costs. *Id.*

This line of cases using the *Aranda* formula for punitive damages raises at least three questions: whether this formula is generally applicable when settlement demands by a plaintiff definitively seek less than the jurisdictional amount; whether the settlement demand or the formula prevails if the two conflict; and whether the medical expenses refer solely to incurred costs or include future treatment costs. The cases using this formula apply it in disparate ways. Courts develop their own commonsense estimate of medical treatment costs, *see Aranda*, 884 F. Supp. 2d at 1207; apply only the medical costs already incurred, *see Quintana v. Yost*, No. CIV 17-0701 JB/JHR, 2018 WL 3849881, at *7 (D.N.M. Aug. 11, 2018); or liberally include future medical expenses, *see Roybal*, 2022 WL 704163, at *3.

In light of this inconsistency, *Fisher* offers persuasive guidance: courts should not apply the formula or estimation without first assessing whether the plaintiff has alleged facts sufficient to support punitive damages. *See Fisher v. Conner*, No. 1:21-CV-01110-KWR-KK, 2022 WL 19190, at *2 (D.N.M. Jan. 3, 2022). In *Fisher*, the plaintiff incurred $15,000 in medical and incidental damages. *Id.* The court observed that the defendant "stretched" to reach the jurisdictional amount by trebling that figure to $45,000 and doubling it for punitive damages to reach a total of $90,000. *Id.* The court found this calculation deficient, noting it was unclear if punitive damages were even at issue since the plaintiff had not alleged facts that would support a punitive damages award. *Id.*

14

"[A] defendant's mere assertion that punitive damages may be possible is insufficient." *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 (10th Cir. 2012); *Tellez-Giron v. Conn's Appliances, Inc.*, No. 1:17-CV-01074 WJ/SCY, 2018 WL 611361, at *3 (D.N.M. Jan. 29, 2018). The defendant need not prove that recovery of punitive damages is more likely than not, but that "(1) state law permits a punitive damages award for the claims in question; and (2) the total award, including compensatory and punitive damages, could exceed $75,000." *Frederick*, 683 F.3d at 1448.

In New Mexico, punitive damages are generally not available for negligence claims but may be appropriate where a defendant has the requisite culpable mental state, which includes willfulness or recklessness. NMRA, Civ. UJI 13-1827; *Paiz v. State Farm Fire & Cas. Co.*, 880 P.2d 300, 308 (N.M. 1994); *see also Burrell v. Burrell*, 229 F.3d 1162 (10th Cir. 2000) (unpublished table decision).

Plaintiff's amended complaint seeks punitive damages for four counts of negligence. Am. Compl. ¶¶ 21–41. These counts mention in passing that Defendant Honeycutt's behavior was "reckless," and the prayer for relief states that that Plaintiff seeks "punitive or exemplary damages for Defendants' reckless disregard of the rights and safety of others." *Id.* ¶ 29. The amended complaint does not otherwise supply details regarding how Defendants' behaviors constitute reckless disregard, as its arguments instead center on Defendants' negligent breach of duties. Defendants are aware that Plaintiff's four causes of action, negligence, respondeat superior, negligent entrustment/supervision, and negligence per se, do not specifically allege that Defendants acted willfully or recklessly. *See* Defs.' Resp. at 5.

However, the Court "need not determine whether it is likely that Plaintiffs would recover punitive damages." *McPhail*, 529 F.3d at 955. Rather, the Court must merely determine whether

15

Defendant has asserted jurisdictional facts that make it possible that punitive damages are in play. *See Frederick*, 683 F.3d at 1248 (explaining that "the question . . . is not whether the class is more likely than not to recover punitive damages, but whether [state] law disallows such a recovery"). The Court concludes that Defendants have not done so.

As with their analysis of compensatory damages, Defendants do very little to prove the jurisdictional facts necessary to establish that punitive damages are at stake. Indeed, Defendants do not even suggest that the *Aranda* formula may apply here to nudge the jurisdictional amount over $75,000, nor do they argue that state law permits punitive damages for these claims. *See Id.*

When aggregating compensatory and punitive damages, "[a] defendant must nevertheless offer more than a 'conclusory statement' that punitive damages are sought under [state] law and that such law authorizes recovery in excess of that jurisdictional amount." *Pacheco v. Keurig Green Mountain, Inc.*, No. CV 19-964 JAP/JFR, 2019 WL 6728755, at *2 (D.N.M. Dec. 11, 2019); *see also Singleton v. Progressive Direct Ins. Co.*, 49 F. Supp. 3d 988, 993 (N.D. Okla. 2014).

Here, Defendants offer only conclusory statements and fail to address whether Plaintiff's claims for punitive damages are permissible under state law. Instead, Defendants merely claim that, "based on Plaintiff's theories of recovery, the claimed severity of the accident, the claimed extremity of the alleged injuries described, and the expansive damages sought, including punitive damages, Plaintiff's Amended Complaint on its face is sufficient by itself to support removal." Defs.' Resp. at 5. Even if punitive damages were permissible under state law, Defendants failed to provide the Court with the necessary analysis showing how such an award would bring the amount in controversy over the jurisdictional threshold. Caselaw suggests that general and conclusory allegations are insufficient to support removal on their face. *See Hernandez*, WL 13284598, at *4 ("These vague and general allegations are simply insufficient for the Court to

16

estimate, without resorting to speculation, what Plaintiff's claimed damages amount to and whether those damages exceed $75,000.").  Because Defendants have failed to affirmatively establish the jurisdictional facts, and Plaintiff never demanded more than $65,000, the Motion to Remand is granted.

III.   Plaintiff Is Not Entitled to Attorneys' Fees Because the Removal Was Not Objectively Unreasonable

28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *See Porter Tr. v. Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1*, 607 F.3d 1251, 1253 (10th Cir. 2010).  Plaintiff requests attorneys' fees and costs, arguing Defendants lacked an objectively reasonable basis to remove this action in light of Plaintiff's settlement demand.  Mot. to Remand at 4.

"The standard for awarding fees should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied." *Ullman v. Safeway Ins. Co.*, 995 F. Supp. 2d 1196, 1251 (D.N.M. 2013).  Although Defendants do not elaborate on how the total damages exceed the jurisdictional threshold, the standard for awarding attorneys' fees upon remand does not depend on whether the notice of removal successfully established jurisdiction; rather, the issue is whether the Defendants' belief that removal was proper was reasonable under the facts.  *See Pacheco*, 2019 WL 6728755, at *2.

Although the Court grants the motion to remand on grounds that Defendants fail to prove the requisite jurisdictional facts, the removal attempt itself was objectively reasonable.  Given the lack of clarity in the total damages sought, it was not unreasonable for Defendants to think that the

amount in controversy could exceed $75,000. "From [Defendants'] perspective, a jury could potentially award the maximum $75,000 in compensatory damages." *Id.* at *3. "The jury could then additionally award *any* amount of punitive damages, causing the total amount of damages to cross the jurisdictional threshold." *Id.* The Court therefore declines to award Plaintiff attorneys' fees and costs associated with removal.

## CONCLUSION

**IT IS ORDERED** that Plaintiff's Motion to Remand is **GRANTED** as described above. Plaintiff's request for attorneys' fees and costs associated with removal is **DENIED**.

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**